

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 21, 1948

Hon. V. C. Marshall
Executive Director
State Soil Conservation Board
Temple, Texas

Opinion No. V-584

Re: Applicability of sub-
section 11g, Section
2, Appropriation bill
for current biennium,
to members of the
State Soil Conserva-
tion Board.

Dear Sir:

Reference is made to your letter of recent date, from which we quote as follows:

"Since Members of the State Soil Conserva-
tion Board first took their oaths of office
in 1939, they have been reimbursed for meals
and lodging as State Employees, being lim-
ited at the present time to Four ($4.00)
Dollars a day for meals and lodging.

"We should appreciate having the opinion of
your Department regarding: Appropriations -
State Department and Agencies, General Pro-
visions, Section 2 Paragraph 11-g, General
and Special Laws - Texas, 50th Legislature,
Regular Session, 1947. And, Section 4-D,
paragraph 2, Texas State Soil Conservation
Law, Acts of the 47th Legislature, Regular
Session, 1941.

"Appropriations, State Department and Agen-
cies, General Provisions, Section 2, para-
graph 11-g, General and Special Laws - Texas,
50th Legislature: -- '* * * Provided, how-
ever, that the meals and lodging limitation
imposed by this Section (11-g only) shall
not apply to any elected State Official when
traveling in or out of State.'"

"Section 4-D, paragraph 2, Texas State
Soil Conservation Law, Acts of the 47th
Legislature, Regular Session, 1941:
' * * but each member shall be entitled
to expenses, including traveling expenses,
necessarily incurred in the discharge of
their duties as members of the Board.'

"We should like the opinion of your De-
partment on the following question:  Are
members of the State Soil Conservation
Board entitled to be reimbursed in the
amount of expenses actually incurred for
meals and lodging?"

The State Soil Conservation Law was first en-
acted in 1939 (Acts 46th Leg., p. 7), reenacted and
amended in 1941 (Acts 47th Leg., p. 491), and is now
known as Article 165a-4, Vernon's Civil Statutes.  Sec-
tion 4A thereof in part, reads:

"There is hereby established to serve
as an agency of the State and to perform
the functions conferred on it in this Act,
the State Soil Conservation Board.  The
Board will consist of five (5) members.
The following shall serve in an advisory
capacity to the Board:  The President of
the Agricultural and Mechanical College of
Texas, the President of Texas Technologi-
cal College, the Director of Vocational
Agriculture of Texas, the State Commissioner
of Agriculture and the State Coordinator of
the Soil Conservation Service of the United
States Department of Agriculture.  The five
(5) elective members of the Board shall be
selected as follows:  The State of Texas is
hereby divided into five (5) State Districts
for the purpose of selecting five (5) mem-
bers of the State Soil Conservation Board."
(Emphasis added throughout this opinion).

The remainder of this section names the coun-
ties comprising each of the five districts.

Sections 4B and 4C prescribe the procedure to
be followed in selecting members of the Board, one from
each district.  The provisions of Section 4B are substan-
tially as follows:

Whenever a member of the Board is to be selected, the Board notifies the County Judge of each County in a "State District" wherein a "District Conservation Convention" is to be held. Upon receipt of such notice, each County Judge is required within twenty days to appoint a "County Soil Conservation Committee" of four members, one from each Commissioners' precinct, each of whom must be a landowner and actually engaged in the business of farming or animal husbandry. The persons so appointed are within five days notified by the County Judge of their appointment. The members of the Committee so selected meet, organize, and select one of its members as chairman.

Section 4C reads:

"The County Soil Conservation Committee in each county shall elect one of its members as a delegate to attend the State District Conservation Convention. The name and address of the delegate to the District Convention shall be certified to the State Soil Conservation Board by the Chairman of the County Soil Conservation Committee not less than twenty (20) days prior to the date of the convention. Each State District Conservation Convention shall elect from among the qualified delegates present, by a majority vote, a member of the State Soil Conservation Board. The Chairman of the District Convention shall within five (5) days, certify to the State Soil Conservation Board, and the Secretary of State the name and address of the person elected. A majority of all qualified delegates elected to the State District Convention shall constitute a quorum. Each member of the State Soil Conservation Board shall be a qualified delegate to the State District Convention which elects his successor.

"Board members for Districts 2 and 4 elected in 1941 under the provisions of House Bill No. 20, Acts, Forty-sixth Legislature, Regular Session shall serve for the term for which they were elected, and until their successors are elected and have qualified. On the first Tuesday in May, 1943, at a place within the district to be

designated by the State Soil Conserva-
tion Board, State District 2 shall elect
a board member as hereinabove provided,
to serve on the State Soil Conservation
Board for a period of five (5) years, and
State District 4 shall elect a board mem-
ber as hereinabove provided to serve on
the State Soil Conservation Board for a
period of four (4) years. Thereafter,
board members elected from State Districts
2 and 4 shall be elected for a period of
five (5) years or until their successors
are elected and have qualified.

"Board members for districts 1, 3,
and 5, elected under the provisions of
House Bill No. 20, Acts, Forty-sixth Leg-
islature, Regular Session, shall hold their
offices for the terms for which they were
elected, and until their successors are
elected and have qualified. On the first
Tuesday in May, 1942, at a place within
the district to be designated by the State
Soil Conservation Board, State District 1
shall elect a board member as hereinabove
provided to serve on the State Soil Con-
servation Board for a period of two (2)
years, and State District 3 shall elect a
board member as hereinabove provided to
serve on the State Soil Conservation Board
for a period of three (3) years, and State
District 5 shall elect a board member as
hereinabove provided to serve on the State
Soil Conservation Board for a period of
four (4) years. Thereafter, board members
elected from State Districts 1, 3, and 5
shall be elected for a period of five (5)
years or until their successors are elected
and have qualified.

"Terms of office of all State Board
Members shall begin on the day following
their election."

Section 4D reads:

"Each member of the State Soil Con-
servation Board shall take the State Con-
stitutional oath of office, and said State

Soil Conservation Board shall designate
one of its elective members to serve as
Chairman.

"Vacancies upon such Board shall be
filled for an unexpired term or for a full
term, by the same manner in which the re-
tiring members were respectively elected.
Elective members of the Board may receive
compensation for their services on the
Board, not to exceed the sum of Ten Dol-
lars ($10) per diem for each day of actual
service rendered, but each member shall be
entitled to expenses, including traveling,
necessarily incurred in the discharge of
his duties as a member of the Board."

The Fiftieth Legislature made an appropriation
to the State Soil Conservation Board of $1800 for each
year of the current biennium for "Travel Expense, Five
Board Members." Act 1947, Item 11, p. 924.

Subsection 11g of the rider to the appropria-
tion bill for State Departments and Agencies for the
current biennium reads:

"All employees traveling at the ex-
pense of the State are hereby limited to
the amount of Three Dollars ($3.00) per
day for meals and a total of Five Dollars
($5.00) per day for meals and lodging, it
being specifically provided that the em-
ployees shall obtain receipts for all items
of expense claimed except meals and shall
file such receipts with their duly item-
ized and sworn expense accounts; provided,
however, that the meals and lodging limita-
tions imposed by this Subsection (11g only)
shall not apply to any elected State offi-
cial nor to any appointed State official
whose appointment is subject to Senate
confirmation, when traveling in or out of
the State; nor to any assistant Attorney
General, or representative of the State
Health Officer, or representative of the
Adjutant General, or representative of the
State Highway Commission, or representa-
tive of the Railroad Commission, when any
of these classes of State employees are

appearing before or consulting with, on
State business, any Federal Agencies in
Washington, D. C."

In Opinion No. O-6615, dated July 13, 1945, a
former Attorney General advised the Comptroller of Pub-
lic Accounts that since Section 4D of Article 165a-4
provided each member of the State Soil Conservation
Board "shall be entitled to expenses, including travel-
ing, necessarily incurred in the discharge of his duties
as a member of the Board", the Legislature was not pro-
hibited by Section 44, Article III, of the Constitution
from making an appropriation to pay the claim of a mem-
ber of the Board for expenses so incurred by him in ex-
cess of the amount appropriated to the Board for that
purpose.

We believe the term "State official", as that
term is used in Subsection 11g, means the same thing as
State officer, or includes such officers. In the case
of Collins v. State, 161 S. W. 115, our Court of Crimi-
nal Appeals said: "In a popular sense a State officer
is one whose jurisdiction is coextensive with the State."
The statute creating the State Soil Conservation Board
prescribes its powers and duties which are coextensive
with the State. Its members are specifically required
to take the constitutional oath of office, and their
tenure of office is fixed. Considering the statute in
its entirety and the public purposes for which the Board
was created, we think the members of the Board are un-
doubtedly "State officials" or State officers within the
purview of subsection 11g.

It is our opinion that the term "elected State
official", as used in subsection 11g, means a State of-
ficial elected by the qualified voters of the State, the
ordinarily accepted definition of that term. It is also
our opinion that the manner prescribed by the statute
for selecting members of the Board, whether for a full
term or to fill a vacancy on the Board, must be construed
as an appointment of such officers.

Section 12, Article IV, of the Constitution
provides that all vacancies in State offices, except
members of the Legislature, shall be filled "unless
otherwise provided by law," by appointment of the Gov-
ernor, which appointment shall be subject to Senate con-
firmation. The statute creating the State Soil Conser-
vation Board fully prescribes the procedure to be fol-

lowed in appointing members of the Board and a vacancy
on the Board is filled in the same manner in which the
retiring member was appointed.

In view of the foregoing conclusions, it nec-
essarily follows that members of the Board do not come
within the exceptions found in subsection 11g pertaining
to an "elected State official" or an "appointed State of-
ficial whose appointment is subject to Senate confirma-
tion."

We have carefully examined all department ap-
propriation bills enacted by the Legislature since 1901
and have found that the Forty-third Legislature was the
first Legislature to attach riders to such bills putting
a per diem limitation for meals and lodging on State em-
ployees or State officers. (Acts 1933, p. 511). The
pertinent part of these riders read:

"All employees covered under this bill
who are traveling at the expense of the State
are hereby limited to the following amounts
for meals and lodging:  for meals not exceed-
ing One Dollar and Sixty Cents ($1.60) per
day, for lodging not exceeding Two Dollars
($2.00) per night . . . provided the provi-
sions of this Act shall not apply to members
of Boards and Commissioners who do not re-
ceive an annual or monthly salary, nor to the
Executive Board or the heads of State Depart-
ments.

"It is expressly provided that the pro-
visions of this Act with reference to travel-
ing expenses shall not apply to the Governor
and Lieutenant Governor."

Similar riders have been attached to such ap-
propriation bills enacted since 1933. The State offi-
cers specifically exempted from the meals and lodging
limitations have not always been the same, but the word
"employees" has invariably appeared in the rider con-
taining such limitations. In the appropriation bills
of 1939 through 1945 the officers exempted from the
meals and lodging limitations are identified in sepa-
rate riders.

The pertinent part of subsection 2e and all
of subsection 2g of the appropriation bill of 1939 (Acts

46th Leg., Spl. Laws, p. 228) respectively read:

Subsection 2e.

"All employees traveling at the expense of the State are hereby limited to the amount of $4. per day expenses for meals and lodging."

Subsection 2g.

"It is expressly provided that the provisions of this Act, with reference to traveling expenses, shall not apply to the Governor and Lieutenant Governor of this State."

This office had occasion to construe the provisions of these two subsections in Opinion No. O-1634, dated November 1, 1939, from which opinion, we quote:

"The specific exemption of these two officials of our State Government indicates clearly that it was the legislative belief that, unless such specific exemption was made, the Governor and Lieutenant Governor in incurring traveling expenses would be limited by the provisions of the rider relative thereto."

The general meals and lodging limitation provision of the Appropriation Bill of 1939 (subsection 2e) was brought forward without change in the Appropriation Bill of 1941 as subsection 12g and subsection 2g was brought forward as subsection 13f. (Acts 47th Leg., p. 1291). Subsection 13f reads:

"It is expressly provided that the provisions of Subsection 12g of this Act with reference to limitation of amount of traveling expense shall not apply to the Governor, the Lieutenant Governor, and the members of Commissions who receive no salary or per diem, when traveling in or out of the State. Nor shall said provision apply to the Adjutant General and his representatives when appearing in Washington, D. C., before the War Department, the Attorney General and his assistants when appearing before the Supreme Court of the United States and Federal Agencies

in Washington, D. C., nor the members of
the Railroad Commission when appearing be-
fore the Interstate Commerce Commission or
other Federal Commissions in Washington,
D. C."

Subsections 12g and 13f were construed in At-
torney General's Opinion No. 0-3998, dated September 30,
1941, wherein it is said:

"We believe that 'State employees' as
used in the appropriation bill (subsection
12g) covers all officers, representatives,
and agents of the State. If this were not
clearly the legislative intent, then the in-
clusion of subsection 13f in the bill would
be a foolish act."

The records of the Comptroller's Office reveal
that from September 1, 1933, the effective date of the
appropriation bill of 1933, down to the present time,
the construction placed on the riders considered in the
two foregoing opinions is the same as has been given by
that department to all such riders attached to the re-
spective departmental appropriation bills.

We think it is apparent that each successive
Legislature since 1933 was aware of the departmental
construction given to the meals and lodging limitations
imposed by the rider attached to the departmental appro-
priation bill of 1933, and approved it, for a rider of
the same general character has been attached to all such
appropriation bills enacted since that time, and each
of such bills has contained a provision exempting cer-
tain State officers from such limitations.

In view of the foregoing, it is our considered
opinion that it was the purpose and intent of the Legis-
lature in enacting Subsection 11g that the limitation
imposed therein upon daily expenditures for meals and
meals and lodging should apply to all State officers ex-
cept those therein specifically exempted therefrom.
Members of the State Soil Conservation Board are not so
exempted.

It is our further opinion that a member of
the Board may legally expend more than $3.00 per day
for meals and more than $5.00 per day for meals and
lodging, if such expenditures be necessary in the per-
formance of his duties, but he cannot be reimbursed

for such excess so incurred from the current appropriation made to the Board for payment of traveling expenses. He may, however, present his claim for the amount of such excess so paid to the Legislature for approval and payment and the Legislature may legally make an appropriation to pay the same, because the statute provides that such members shall be entitled to their traveling expenses incurred in the discharge of their official duties.

<u>SUMMARY</u>

A member of the State Soil Conservation Board is subject to the meals and lodging limitations imposed by Subsection 11g of the rider to the current departmental appropriation bill. H. B. 391, Acts 50th Leg., Article 165a-4, V. C. S.; Sec. 12, Art. IV, State Constitution.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By        *Bruce W. Bryant*

Bruce W. Bryant
Assistant

BWB:wb:erc

APPROVED:

*Price Daniel*
ATTORNEY GENERAL